14 Civ ____

═══════════════════

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

═══════════════════

BRIAN CARMICHAEL,

Petitioner,

-against-

PAUL CHAPPIUS,

Superintendent, Elmira Correctional Facility,

Respondent.

═══════════════════

MEMORANDUM IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

═══════════════════

RICHARD M. GREENBERG, ESQ.
rgreenberg@apppellatefender.org
SARA GURWITCH, ESQ.
sgurwitch@appellatedefender.org
Attorneys for Petitioner

OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, NY  10007
(212) 402-4100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Jury Selection: Relying on New York's "Other Facts or Circumstances"
Rule, the Trial Court Denies Each of the Four Defense Batson
Challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    New York's "Other Facts or Circumstances" Rule, for Establishing a
Prima Facie Case of Discrimination in the Exercise of Peremptory
Challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Applying the New York "Other Facts or Circumstances" Rule, the
Intermediate Appellate Court Affirms the Trial Court's Finding of No
Prima Facie Case of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Brian Carmichael Moves to Vacate the Judgment by Way of a State
Criminal Procedure Law Section 440.10 Motion . . . . . . . . . . . . . . . . . . . 10

ARGUMENT

    POINT I
    THE NEW YORK STATE STANDARD FOR DETERMINING
    WHETHER A PRIMA FACIE CASE OF DISCRIMINATION IN THE
    EXERCISE OF PEREMPTORY CHALLENGES HAS BEEN
    ESTABLISHED – WHICH WAS APPLIED IN THIS CASE AND
    REQUIRES "FACTS OR CIRCUMSTANCES" IN ADDITION TO
    NUMERICAL EVIDENCE – IS AN UNREASONABLE
    APPLICATION OF FEDERAL CONSTITUTIONAL LAW AS
    DETERMINED BY THE SUPREME COURT, AND IS CONTRARY
    TO THE STANDARD ESTABLISHED BY THE SUPREME COURT
    IN BATSON V. KENTUCKY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT II
THE STATE COURT FACTUAL DETERMINATION THAT NO
PRIMA FACIE CASE OF DISCRIMINATION HAD BEEN
ESTABLISHED UNDER BATSON IS UNREASONABLE BY CLEAR
AND CONVINCING EVIDENCE; ACCORDINGLY, IT MUST BE
SET ASIDE AND BRIAN CARMICHAEL'S PETITION FOR A WRIT
OF HABEAS CORPUS GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

POINT III
WHERE NEW YORK STATE HAS ADDED AN ADDITIONAL
ELEMENT FOR ESTABLISHING A PRIMA FACIE CASE OF
DISCRIMINATION UNDER BATSON, TRIAL COUNSEL'S
FAILURE TO KNOW AND FOLLOW NEW YORK LAW IS
INEFFECTIVE ASSISTANCE OF COUNSEL; THE STATE COURTS'
RULINGS TO THE CONTRARY ARE AN UNREASONABLE
APPLICATION OF THE INEFFECTIVE ASSISTANCE OF
COUNSEL STANDARD OF STRICKLAND V. WASHINGTON. . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

Cases

Batson v. Kentucky, 476 U.S. 79 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Everett v. Beard, 290 F.3d 500 (3[d] Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . 26

Flores v. Demskie, 215 F.3d 293 (2[d] Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . 26

Galarza v. Keane, 252 F.3d 630 (2[d] Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 27

Green v. Travis, 414 F.3d 288 (2[d] Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . 23

Harris v. Hardy, 680 F.3d 942 (7th Cir. 2012)  . . . . . . . . . . . . . . . . . . . . 20, 27, 28

Harris v. Kuhlmann, 346 F.3d 330 (2[d] Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 20

Holloway v. Horn, 355 F.3d 707 (3[d] Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . 20

Johnson v. California, 545 U.S. 162 (2005)  . . . . . . . . . . . . . . . . . . . . . 9, 16, 23

Jones v. West, 555 F.3d 90 (2[d] Cir. 2009)  . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 19

Miller-El v. Cockrell, 537 U.S. 322 (2003)  . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Morales v. Greiner, 273 F. Supp.2d 236 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . 13

Overton v. Newton, 295 F.3d 270 (2[d] Cir 2002) . . . . . . . . . . . . . . . . . . . . . . 15, 16

Paulino v. Castro, 371 F.3d 1083 (9th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . 20, 24

People v. Brown, 97 N.Y.2d 500 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

People v. Cobb, 77 A.D.3d 673 (N.Y. Sup. Ct. 2[d] Dep't 2010) . . . . . . . . . . . . . . 9

People v. Glenn, 7 A.D.3d 314 (N.Y. Sup. Ct. 1st Dep't 2004) . . . . . . . . . . . . . . 9

People v. Hecker, 15 N.Y.3d 625 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v. Hunt, 50 A.D.3d 1246 (N.Y. Sup. Ct. 3[d] Dep't 2008) . . . . . . . . . . . . . 9

People v. Santos, 105 A.D.3d 1064 (N.Y. Sup. Ct. 2[d] Dep't 2013) . . . . . . . . . . . 9

People v. Simmons, 84 A.D.3d 1120 (N.Y. Sup. Ct. 2[d] Dep't 2011) . . . . . . . . . . 9

Strickland v. Washington, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . 25, 26, 28

Tankleff v. Senkowski, 135 F.3d 235 (2[d] Cir. 1998) . . . . . . . . . . . . . . . . . . . 20, 27

Truesdale v. Sabourin, 427 F. Supp.2d 451 (S.D.N.Y. 2006) . . . . . . . . . . . . 17, 21

United States v. Battle, 836 F.2d 1084 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 18

United States v. Stewart, 65 F.3d 918 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 18

United States v. Yakobowicz, 427 F.3d 144 (2[d] Cir. 2005) . . . . . . . . . . . . . . . . 27

Washington v. Davis,  426 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Williams v. Runnels, 432 F.3d 1102 (9th Cir 2006) . . . . . . . . . . . . . . . . . . . . . . 19

Williams v. Taylor, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Constitutional Provisions

U.S. Const. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

U.S. Const. amend. XIV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25, 28

Statutes

28 U.S.C. § 2254(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 2254(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 24

28 U.S.C. § 2254(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## INTRODUCTION

At primary issue in this petition is how the State courts adjudicated the four Batson challenges made by Brian Carmichael's trial attorney.  With each Batson challenge, the defense demonstrated that the prosecution was using peremptory challenges to achieve total or near-total exclusion of African-American individuals from the jury.  During a jury selection process in which more than 200 individuals were considered for the jury, only eight of these individuals were African-American, and the prosecution removed six of these eight individuals by use of peremptory challenges.

At the first Batson challenge, the exclusion rate[1] was 100 percent (two African-American individuals had been considered for the jury; the prosecution used peremptory challenges to remove both of these individuals); at the second challenge, the exclusion rate was 75 percent (four African-American individuals had been considered, and the prosecution used peremptory challenges to remove three of these individuals); at the third challenge, the exclusion rate was 80 percent (five African-American individuals had been considered, and the prosecution used peremptory challenges to remove four of these individuals); at the fourth challenge, which

---

[1] The exclusion rate is the rate at which a party strikes members of a cognizable group from the venire by use of peremptory challenges.  Jones v. West, 555 F.3d 90, 98 (2[d] Cir. 2009).

1

occurred during the selection of alternate jurors, the exclusion rate, with respect to the alternate pool, was 100 percent (two African-American individuals had been considered, and the prosecution used peremptory challenges to remove both of these individuals), or, with respect to the entire voir dire, 75 percent (eight African-American individuals had been considered, and the prosecution used peremptory challenges to remove six of these individuals).

Relying on the New York "other facts or circumstances" rule set out in People v. Brown, 97 N.Y.2d 500 (2002), the trial judge concluded that these exclusion rates were insufficient to establish a prima facie case of discrimination under Batson. Using the same rationale, the State intermediate appellate court affirmed the trial court's Batson rulings.

Because the New York "other facts or circumstances" rule is inconsistent with the rule set out by the Supreme Court in Batson, the State intermediate appellate court's ruling based on it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Further, the trial court's factual determination, which was affirmed by the intermediate appellate court, that, for each of the four Batson challenges, a prima facie claim of discrimination in the exercise of peremptory challenges had not been established, was unreasonable, when viewed under the

required "clear and convincing" standard.  See 28 U.S.C. § 2254(d)(2).

Mr. Carmichael's petition also raises an issue of ineffective assistance of trial counsel, for counsel's failure to know of and act in accordance with New York's "other facts or circumstances" rule.  This issue was litigated initially in a post-judgment motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law Section 440.10.  Even though the four Batson challenges trial counsel presented on Mr. Carmichael's behalf were sufficient under federal law, they did not meet the New York State standard, which requires facts beyond numerical evidence.  As New York's "other facts or circumstances" rule was the controlling law at Mr. Carmichael's trial in state court, his attorney's lack of awareness of it – and resulting inability to meet it – rendered the attorney's performance constitutionally ineffective.  Federal constitutional law, articulated in Strickland v. Washington requires, at a minimum, an attorney's awareness of the controlling law.  Accordingly, the intermediate state court's determination that counsel provided effective assistance of counsel was "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## STATEMENT OF THE CASE

Brian Carmichael was sentenced to three concurrent prison terms of seventeen years after being convicted of selling small amounts of methamphetamine to Denise May, a drug dealer and the main prosecution witness.  Ms. May testified that, on three occasions, on November 3, 16, and 22 of 2006, she bought methamphetamine from Brian Carmichael and that she, after taking her profit of thirty-five percent, T. 918,[2] sold the drugs in question to a person she believed to be a drug dealer.  This person was, in fact, an undercover police officer.

Jury Selection:  Relying on New York's "Other Facts or Circumstances" Rule, the Trial Court Denies Each of the Four Defense Batson Challenges

After the first round of jury selection, defense counsel made a challenge pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), based on the fact that the prosecution had used peremptory challenges to remove all the African-American members of the panel.  VD. 180-81.[3]  As counsel explained, the panel was "sparse of minorities," VD. 181, and the prosecutor had used peremptory challenges to remove the only two African-American members of the venire, VD. 181, demonstrating a "pattern," VD. 181, of excluding African-American individuals from the jury.  Even

---

[2] The trial transcript is cited as "T." followed by the page number.

[3] The transcript of the voir dire, conducted September 17-20, 2007, is cited as "VD." followed by the page number.

4

with an exclusion rate of 100 percent,  the court rejected the challenge based on its conclusion that the defense had failed to establish a prima facie case of discrimination.  VD. 181-82.  The judge's reasoning was as follows: "that by itself does not constitute prima facie showing of a pattern of use of strike[s] in a discriminatory way requiring us to go on to step two of the Batson procedure."  VD. 181 (emphasis added).  The judge further stated that he was relying on People v. Brown, 97 N.Y.2d 500 (2002), the New York Court of Appeals case that sets out the "other facts or circumstances" rule.  VD. 182.

The next day, after the second round of jury selection, the defense renewed its Batson application, based on the fact that three of the four African-American members of the first two panels (i.e. an exclusion rate of 75 percent) had been struck by the prosecution using peremptory challenges.  VD. 320-21.  Defense counsel explained, "We only considered four African Americans so far three of which have been [peremptorily] challenged by the People."  VD. 321.  (The fourth African-American individual, Ms. Boyd,[4] had been selected as a juror.  VD. 320, 321.)  In again finding the defense had failed to establish a prima facie case, the judge explained, "the statistical basis is not sufficient alone to raise a discriminatory use of a free peremptory challenge under New York law."  VD. 323.  (Also, while not

---

[4] This name also appears as "Bode" in the transcript.

factoring this into his decision, the trial judge stated that Yalira Velarde, who was struck by the defense by use of a peremptory challenge, was African-American.  VD. 321-22.  Defense counsel noted that he believed Ms. Velarde was Hispanic, and not African-American.  VD. 322.  On the question of Ms. Velarde's race/ethnicity, the judge ended the discussion by stating:  "I am not saying you are right and I am wrong or the opposite."  VD.  322.)

When the prosecution peremptorily challenged the very next African-American member of the venire, the defense made its third Batson challenge.  Counsel explained:  "Ms. Simmons is African American and it's now four out of five.  Only had five."  VD. 323B.  Counsel continued, "I think at some point it becomes clear that there's a Batson issue here.  I think we've reached that point.  I would ask your Honor to make assistant district attorney Bayles state his reasons for his challenge[s] at this point."  VD. 323B.  At the time of the third Batson challenge, defense counsel estimated that 140 individuals had been considered during the two days of voir dire, and that only five had been African-American.  VD. 323B.  (The trial judge took the position that six individuals were African-American, as he included Ms. Velarde in this group, even though the question of her race/ethnicity remained unresolved.  See supra; VD. 322.)

Again relying on New York law, the trial judge found the numerical evidence presented by the defense insufficient to establish a prima facie case of discrimination in the exercise of peremptory challenges.  VD. 323B-C.  He explained, "Again under the case law of our state . . . decision on the percentage aspect of the challenges under New York law pursuant to our court of appeals are generally not sufficient to raise or recreate an inference or create a prima facie case of discriminatory use of peremptory challenges."  VD. 323B-C.  The trial judge further stated, "If that's the basis of the challenge I note it.  Whether in your mind it's the five, my calculation four out of six, that's the only basis for the challenge then the challenge or objection has to be denied."  VD. 323C.  Demonstrating his understanding that numerical evidence, specifically the exclusion rate, is sufficient to establish a prima facie case of discrimination in the exercise of peremptory challenges, defense counsel stated, "I don't know what other basis there could possibly be, other than statistical basis on its face has to be based on the number that we consider and the number of challenges exercised.  I don't see any potential basis  that I can cite other than the numbers."  VD. 323C.

The defense made a fourth and final Batson application after the prosecution used peremptory challenges to remove the only two African-American individuals being considered as alternate jurors.  VD. 420.  Considering not only the alternate

7

pool, but all the panels, defense counsel explained that, of the approximately 210 individuals who had been considered for the jury, eight were African-American, and the prosecution used peremptory challenges to remove six of those eight individuals from the jury.  VD. 420.  He stated, "I see a clear pattern of challenging African Americans."  VD. 420.  In response, the trial judge confirmed that the defense was again relying on statistical evidence, specifically the exclusion rate, in establishing a prima facie case of discrimination in the exercise of peremptory challenges.  He asked, "That's the basis of your challenge or objection to the exercise of peremptory challenges?"  VD. 421.  The trial judge again found statistical evidence insufficient to meet the burden of establishing a prima facie case of discrimination.  He explained, "the statistical analysis by itself does not . . . create a prima face case requiring us to go on to step two of the analysis so the challenge must be denied."  VD. 421 (emphasis added).

New York's "Other Facts or Circumstances" Rule, for Establishing a Prima Facie Case of Discrimination in the Exercise of Peremptory Challenges

The rule that the trial judge applied in response to Mr. Carmichael's four Batson challenges was articulated in People v. Brown, 97 N.Y.2d 500 (2002).  In Brown, the New York Court of Appeals held that, "A disproportionate number of strikes used against members of a particular racial or ethnic group may be indicative

of a discriminatory pattern, but such a fact is rarely conclusive in the absence of other facts or circumstances." Id. at 507.  In People v. Hecker, 15 N.Y.3d 625 (2010), the New York Court of Appeals re-affirmed the Brown holding, id. at 651, and explained that, absent a 100 percent exclusion rate,  New York law requires "other factors [in addition to numerical evidence] on the record to meet the step one burden." Id. at 653-54.  This clear rule of New York law is consistently followed by the lower New York courts, as in Mr. Carmichael's case.  See, e.g., People v. Santos, 105 A.D.3d 1064, 1065 (N.Y. Sup. Ct. 2d Dep't 2013); People v. Simmons, 84 A.D.3d 1120, 1121-22 (N.Y. Sup. Ct. 2d Dep't 2011); People v. Cobb, 77 A.D.3d 673, 673 (N.Y. Sup. Ct. 2d Dep't 2010); People v. Hunt, 50 A.D.3d 1246, 1247 (N.Y. Sup. Ct. 3d Dep't 2008); People v. Glenn, 7 A.D.3d 314, 315 (N.Y. Sup. Ct. 1st Dep't 2004).

Applying the New York "Other Facts or Circumstances" Rule, the Intermediate Appellate Court Affirms the Trial Court's Finding of No Prima Facie Case of Discrimination

Brian Carmichael appealed his conviction to the Appellate Division, First Department.  With respect to the Batson issue presented in this petition, the First Department held:

> The court properly denied defendant's applications made pursuant to Batson v. Kentucky, 476 U.S. 79 (1986).  Viewing jury selection as a whole, we conclude that defendant did not meet his burden at step one of the inquiry.  Defendant did not produce "evidence sufficient to permit the trial judge to draw an inference that discrimination ha[d] occurred"

9

in the exercise of peremptory challenges (<u>Johnson v. California</u>, 545 U.S. 162, 170 (2005)). While numerical evidence may suffice, in this case it did not warrant an inference of discrimination.

<u>People v. Carmichael</u>, 73 A.D.3d 622 (N.Y. Sup. Ct. 1st Dep't 2010), Ex. B-1.  Mr. Carmichael sought leave to appeal to the New York Court of Appeals, which was denied.  <u>People v. Carmichael</u>, 16 N.Y.3d 797 (2011), Ex. B-2.  Mr. Carmichael then sought a writ of certiorari, which was denied.  <u>Carmichael v. New York</u>, 132 S. Ct. 199 (2011), Ex. B-3.

<u>Brian Carmichael Moves to Vacate the Judgment by Way of a State Criminal Procedure Law Section 440.10 Motion</u>

Subsequently, Mr. Carmichael moved, pursuant to New York Criminal Procedure Law Section 440.10, to vacate the judgment of conviction, based on, <u>inter alia</u>, trial counsel's lack of awareness of New York's "other facts or circumstances rule," which controls the establishment of a prima facie case of discrimination in the exercise of peremptory challenges.  Mr. Carmichael demonstrated that there were a number of "other facts or circumstances" that could have met the New York standard, but which trial counsel failed to articulate as part of his <u>Batson</u> challenges.

In <u>Brown</u>, the New York Court of Appeals gave as an example of "other facts or circumstances," that the members of the panel had "proprosecution backgrounds." 97 N.Y.2d at 507.  There was ample proof of this kind in this case, but defense

10

counsel – due to his lack of understanding of his obligations under New York law – failed to provide it.   Ms. Boiken,[5] who was peremptorily challenged by the prosecution, volunteered that her aunt was a New York Police Department lieutenant, VD. 107-08, 146; similarly, Ms. Simons volunteered that her uncle was a retired member of the FBI.  VD. 250.  Also, Ms. Hamilton[6] and Ms. Grant both volunteered that they had multiple friends and family members who were members of law enforcement.  VD. 101-02, 248.

As part of his motion to vacate the judgment of conviction, Mr. Carmichael submitted a sworn statement from trial counsel in which counsel explained, "I made four Batson applications, as it appeared that the prosecutor was attempting to remove African-American individuals from the jury.   The pattern of the prosecutor's peremptory strikes was very stark, so I relied on the numerical pattern.  At the time, I believed this was sufficient to meet my burden at step one of Batson."  Affirmation of James Palumbo, Esq., dated June 26, 2012, at Ex. C-1, ¶ 7.  Counsel further stated, "When I spoke to [appellate counsel], she told me that there are a number of [New York] cases that say that, at step one, a lawyer has to provide other evidence of discrimination – beyond the numerical pattern.  I had never understood this to be the

---

[5] This name also appears as "Boyton" in the transcript.

[6] This name also appears as "Hampton" in the transcript.

11

moving party's burden at step one – I had thought the moving party was not required to provide this type of 'other' information unless the Batson application progressed to step three."  Id.

The trial-level court denied the motion.  With respect to the aspect of Mr. Carmichael's claim of ineffective assistance of counsel dealing with trial counsel's failure to understand and act in accordance with New York law regarding Batson, the motion court suggested that additional evidence is not always "required" at step one of Batson, under New York law.  See Decision of Roger S. Hayes, J.S.C, dated Dec. 14, 2012, at Ex. C-2, at 11.  In the alternative, with respect to this aspect of the claim of ineffective assistance of counsel, the motion court found that Mr. Carmichael failed to demonstrate that he would have ultimately prevailed with the Batson challenges.  Id.

Mr. Carmichael sought and was granted leave to appeal by the intermediate appellate court, which ultimately affirmed the lower court's decision denying the motion to vacate.  People v. Carmichael, 118 A.D.3d 603 (N.Y. Sup. Ct. 1st Dep't 2014), C-4.  Regarding counsel's failure to meet the New York standard for establishing a prima facie case of discrimination in the exercise of peremptory challenges, the intermediate appellate court stated:

12

Regardless of whether counsel should have made a more detailed attempt to establish a prima facie case of discrimination pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), defendant has not shown that such efforts would have ultimately resulted in the seating of any jurors peremptorily challenged by the prosecutor.  In any event, defendant has not shown that any Batson violation resulted in an unfair jury (see Morales v. Greiner, 273 F. Supp.2d 236, 253 (E.D.N.Y.2003)).

Id.  Mr. Carmichael sought leave to appeal this decision to the New York Court of

Appeals, which was denied.  See Ex. C-5.

ARGUMENT

POINT I

THE NEW YORK STATE STANDARD FOR DETERMINING
WHETHER A PRIMA FACIE CASE OF DISCRIMINATION IN THE
EXERCISE OF PEREMPTORY CHALLENGES HAS BEEN
ESTABLISHED – WHICH WAS APPLIED IN THIS CASE AND
REQUIRES "FACTS OR CIRCUMSTANCES" IN ADDITION TO
NUMERICAL EVIDENCE – IS AN UNREASONABLE
APPLICATION OF FEDERAL CONSTITUTIONAL LAW AS
DETERMINED BY THE SUPREME COURT, AND IS CONTRARY
TO THE STANDARD ESTABLISHED BY THE SUPREME COURT
IN BATSON V. KENTUCKY.

The four Batson challenges made by the defense at Mr. Carmichael's trial in

state court were based on a stark pattern of exclusion of African-American

individuals from the jury by the prosecutor.  While clearly established federal

constitutional law, as set out by the Supreme Court in Batson, makes clear that this

stark pattern was sufficient to meet the "non-onerous" burden of demonstrating a

prima facie case of discrimination in the exercise of peremptory challenges, the state

courts applied a heightened New York rule and denied the Batson challenges.  In

applying the New York rule, which requires "other facts or circumstances" in addition

to numerical evidence, the state courts both acted contrary to clearly established

federal law, and unreasonably applied that law.  Accordingly, Mr. Carmichael's

petition for a writ of habeas corpus should be granted.  See U.S. Const. amend. XIV;

14

28 U.S.C. § 2254(d)(1).

28 U.S.C. Section 2254 (d)(1) provides for habeas relief where the state court decision at issue, "was contrary to, or involved an unreasonable application of established Federal law as determined by the Supreme Court of the United States." The Supreme Court has explained that a state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court's conclusion on a question of law is "opposite" to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision "involves an unreasonable application of" clearly established federal law as determined by the Supreme Court if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the particular facts of [the] case." Id. "An unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Id. at 412. The "unreasonable application" standard "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." Overton v. Newton, 295 F.3d 270, 277 (2$^d$ Cir 2002) (citations omitted). Although "[s]ome increment of incorrectness beyond error is required, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to

suggest judicial incompetence." Id. (citations omitted).   Here, the state court decisions are both contrary to and an unreasonable application of the Batson rule.

In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court set out and explained the three-step protocol for adjudicating claims of discrimination in the exercise of peremptory challenges during jury selection.   At issue in this case is the first step of the Batson protocol, which requires the moving party to establish a prima facie case of discrimination.   Id. at 96.[7]   In explaining how a prima face case can be established, the Batson Court gave the example of a "'pattern' of strikes."   Id. at 97; see also id. at 93 ("total or seriously disproportionate exclusion of Negroes from jury venires . . . is itself such an 'unequal application of the law . . . as to show intentional discrimination'") (quoting Washington v. Davis, 426 U.S. 229 (1976)).   The step one burden was not intended to be "onerous," and the moving party is not required to "prove[] discrimination at step one."   Johnson v. California, 545 U.S. 162, 169-70 (2005).

New York's "other facts or circumstances" rule, which was applied by the State courts here, rejects the Batson standard.   Rather than a "non-onerous" standard where

---

[7] Neither step two nor step three of the Batson protocol is at issue in this case.   At step two, the non-moving party must provide race-neutral reasons for the exercise of the peremptory challenges at issue.   If race-neutral reasons are provided, the inquiry moves to step three, where the court determines whether purposeful discrimination was established.

the "pattern of strikes," <u>Batson</u>, 476 U.S. at 97, meets the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges, the New York courts have established a higher initial standard for the moving party, where a pattern of strikes is insufficient at step one unless combined with "other facts or circumstances." <u>People v. Brown</u>, 97 N.Y.2d 500 (2002). Because this standard, which was applied in Mr. Carmichael's case, is not the required <u>Batson</u> standard, it is "contrary to" clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. at 413; <u>Truesdale v. Sabourin</u>, 427 F. Supp.2d 451, 459 (S.D.N.Y. 2006) (state court decision, relying on <u>Brown</u> standard, is contrary to clearly established federal law). It is, in the alternative, an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. at 413.

In granting habeas relief where the New York courts had concluded that the step one <u>Batson</u> burden was not met, the Second Circuit has explained that a prima facie case of discrimination in the exercise of peremptory challenges can "be inferred when a party uses peremptory challenges to strike a disproportionate number of members of a cognizable racial group from the venire," i.e. "the party's 'exclusion

rate.'" Jones v. West, 555 F.3d 90, 98 (2$^d$ Cir. 2009).[8]  At Mr. Carmichael's trial, the

exclusion rates were sufficiently high to meet the step one burden, and thus require

the prosecutor to provide race-neutral reasons for the strikes.  At the first Batson

challenge, the exclusion rate was 100 percent; at the second challenge, it was 75

percent; at the third challenge, it was 80 percent; and at the fourth challenge, it was

either 100 percent, if one looks to the pool of alternate jurors only, or 75 percent, if

one combines the alternate pool with the pool for selection of regular jurors.  Notably,

not only were the exclusion rates extremely high, but the number of individuals at

issue was sufficiently large that the exclusion rates were statistically meaningful:  of

the more than two hundred individuals considered for the jury (or as alternates), eight

were African-American and the prosecutor used peremptory challenges to exclude six

of these eight individuals.

Furthermore, this was not a situation where there was a limited pattern of

exclusion:  from the beginning to the end of the jury selection, the prosecutor used

peremptory challenges to exclude African-American individuals from the jury, which

caused the defense to make four Batson challenges.  In fact, it appears that the trial

---

[8] See also United States v. Stewart, 65 F.3d 918, 925 (11th Cir. 1995) (prima facie case established where defendants struck three out of the four African-American venire members); United States v. Battle, 836 F.2d 1084, 1085-86 (8th Cir. 1987) (prima facie case established where prosecution struck five of seven African-American individuals from the jury panel).

judge's refusal to find a prima facie case of discrimination even in the face of a stark pattern of exclusion emboldened the prosecutor to use his peremptory challenges in a discriminatory fashion.  When the trial judge found no prima facie case of discrimination after the second <u>Batson</u> challenge – which was based on an exclusion rate of 80 percent – the prosecutor used a peremptory challenge to strike the very next African-American person being considered for the jury.  <u>See</u> VD. 323B.

Notably, the federal courts have found habeas relief appropriate in a number of cases where the state courts had concluded that a prima facie case of discrimination in the exercise of peremptory challenges was not established based on numerical evidence only.  In <u>Jones v. West</u>, the Court concluded that, "the Appellate Division's finding that <u>Jones</u> had not made out a prima facie case of discrimination at the time of his second <u>Batson</u> challenge [where the showing was an exclusion rate of 80 percent] was an unreasonable application of <u>Batson</u>."  555 F.3d at 97;[9] <u>see also</u> <u>Williams v. Runnels</u>, 432 F.3d 1102 (9th Cir 2006) (habeas corpus petition granted where state court erroneously concluded that statistical evidence was insufficient to

---

[9] On the facts of <u>Jones,</u> the court stated that ultimately, "It is unnecessary to decide whether a pattern of striking four out of five members of a single racial group would, on its own, establish a prima facie case of discrimination.  In this case, in addition to the prosecutor's pattern of strikes, the state trial court also had the significant circumstance before it that it had concluded that the prosecutor's statements concerning Mr. Barry were pretextual reasons for the peremptory strike." 555 F.3d at 100.

establish prima facie case of discrimination in exercise of peremptory challenges); Harris v. Kuhlmann, 346 F.3d 330, 345-46 (2$^d$ Cir. 2003); Tankleff v. Senkowski, 135 F.3d 235, 249 (2$^d$ Cir. 1998); cf. Harris v. Hardy, 680 F.3d 942, 951 (7th Cir. 2012) (where the prosecution used peremptory challenges to remove "nearly all" African American individuals from the jury, the "pattern of peremptory strikes against African Americans gives rise to an inference of discrimination").

In Paulino v. Castro, 371 F.3d 1083 (9th Cir. 2004), the court considered a situation that is analytically-similar to that presented by this case.  The habeas court explained that the California courts were applying an "impermissibly stringent" rule, rather than the "more generous" step one Batson test.   Id. at 1090.  Further, the habeas court concluded that a prima facie case of discrimination had been established where the prosecutor had used peremptory challenges to remove five of six African-American members of the venire, even where the prosecutor had permitted one African-American individual to serve as a juror.  Id. at 1092; see also Holloway v. Horn, 355 F.3d 707 (3$^d$ Cir. 2004) (even where prosecutor permitted African-American individuals to become jurors, pattern of strikes removing African-American members of the venire established prima facie case of discrimination, contrary to the state court's determination; accordingly, habeas corpus petition granted).

20

By using a standard that adds a requirement beyond that set out in <u>Batson</u> for establishing a prima facie case of discrimination in the exercise of peremptory challenges, the New York courts, in Mr. Carmichael's case, acted contrary to clearly established federal law.   <u>See</u>, <u>e.g.</u>, <u>Truesdale</u>, 427 F. Supp.2d at 459.   In the alternative, the state courts' manner of analyzing whether a prima facie case had been established under <u>Batson</u> in Mr. Carmichael's case is an unreasonable interpretation of clearly established federal law as determined by the Supreme Court.   Accordingly, pursuant to 28 U.S.C. 2254(d)(1), Mr. Carmichael's petition for a writ of habeas corpus should be granted.

<u>POINT II</u>

THE STATE COURT FACTUAL DETERMINATION THAT NO
PRIMA FACIE CASE OF DISCRIMINATION HAD BEEN
ESTABLISHED UNDER <u>BATSON</u> IS UNREASONABLE BY CLEAR
AND CONVINCING EVIDENCE; ACCORDINGLY, IT MUST BE
SET ASIDE AND BRIAN CARMICHAEL'S PETITION FOR A WRIT
OF HABEAS CORPUS GRANTED.

Where the state trial court was, four times, presented with strong evidence that

the prosecutor was exercising peremptory challenges in a racially discriminatory

manner – including exclusion rates of African-American individuals of 100 percent,

75 percent, 80 percent, and 100 or 75 percent,[10] respectively – the court's factual

determination that no prima facie case of discrimination had been established is an

unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2); <u>Batson</u>, 476 U.S.

79.  Accordingly, Mr. Carmichael's petition for a writ of habeas corpus should be

granted.

In <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003), the Supreme Court explained

that, in the <u>Batson</u> context, a trial court's determination of "discriminatory intent

represents a finding of fact."  <u>Id.</u> at 340 (citations omitted).  Accordingly, such a

determination by a state judge will not be overturned by a federal court absent "clear

---

[10] The fourth <u>Batson</u> challenge occurred during the selection of alternate jurors.  For the
group being considered for alternate spots, the exclusion rate is 100 percent; for the entire voir
dire, the exclusion rate is 75 percent.

22

and convincing evidence to the contrary." 28 U.S.C. § 2254(e)(1). The <u>Miller-El</u> Court cautioned, however, "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's [factual] determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." 537 U.S. at 340.

The state trial court's factual determination in Mr. Carmichael's case that no prima facie case of discrimination in the exercise of peremptory challenges was established is incorrect by clear and convincing evidence and, therefore, is not entitled to deference by this Court. <u>Batson</u> and its progeny make plain that a stark pattern of strikes against members of a cognizable group is sufficient to meet the non-onerous step one burden. 476 U.S. at 97; <u>Johnson</u>, 545 U.S. at 169-70. Thus, where defense counsel argued that there was a "pattern" of discriminatory strikes, VD. 181, 420, and he, in four separate applications, demonstrated that the prosecutor was using peremptory challenges to remove all, or virtually all, African-American individuals from the jury, clear and convincing evidence does not support the factual conclusion that the defense failed to establish a prima facie case of discrimination in the exercise of peremptory challenges. <u>See also</u> <u>Green v. Travis</u>, 414 F.3d 288, 298-99 (2$^{\text{d}}$ Cir.

23

2005) (New York court's factual determination that a prima facie case had not been established was "unreasonable"); Paulino, 371 F.3d at 1090 (state court factual finding of no prima case of discrimination not entitled to deference where the factual finding was based on an incorrect legal standard).

Because the state court decisions were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), this Court should grant Mr. Carmichael's petition for a writ of habeas corpus.

POINT III

WHERE NEW YORK STATE HAS ADDED AN ADDITIONAL ELEMENT FOR ESTABLISHING A PRIMA FACIE CASE OF DISCRIMINATION UNDER BATSON, TRIAL COUNSEL'S FAILURE TO KNOW AND FOLLOW NEW YORK LAW IS INEFFECTIVE ASSISTANCE OF COUNSEL; THE STATE COURTS' RULINGS TO THE CONTRARY ARE AN UNREASONABLE APPLICATION OF THE INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD OF STRICKLAND V. WASHINGTON.

A minimum requirement of effective counsel is knowledge of the prevailing law.  Only with this knowledge can counsel effectuate the rights of his or her client.  Mr. Carmichael's trial attorney has admitted in a sworn statement, however, that he was unaware that New York State applies a heightened "other facts or circumstances" rule to Batson challenges based on numerical evidence.  Unaware of the controlling New York law, counsel was unable to effectuate Mr. Carmichael's rights under Batson.  This serious lapse denied Mr. Carmichael of his right to effective assistance of counsel.  U.S. Const. amends. VI, XIV; Strickland v. Washington, 466 U.S. 668, 688 (1984).  Because the state courts unreasonably applied the Strickland rule in adjudicating Mr. Carmichael's claim of ineffective assistance of counsel, this Court should grant Mr. Carmichael's petition for a writ of habeas corpus.

Under Strickland, counsel is constitutionally ineffective where his or her performance falls below an objective standard of reasonableness, and there is a

reasonable probability that, but for the counsel's error, the outcome of the proceeding would have been different.  466 U.S. at 688, 694.  With respect to the first prong of the <u>Strickland</u> test, the reviewing court looks to the controlling law in the jurisdiction of the representation.  See <u>Flores v. Demskie</u>, 215 F.3d 293 (2<sup>d</sup> Cir. 2000) (counsel's lack of awareness of, and resulting inability to effectuate his client's rights under, New York law was ineffective assistance of counsel).  Here, even though the law that controlled at Mr. Carmichael's trial in New York State court is in conflict with federal law, <u>see</u> Point I <u>supra</u>, counsel was obligated to know the controlling law, and effectuate Mr. Carmichael's rights under it.  See <u>Everett v. Beard</u>, 290 F.3d 500, 509 (3<sup>d</sup> Cir. 2002) ("[a] reasonably competent attorney patently is required to know the state of the applicable law").  Furthermore, that trial counsel made four <u>Batson</u> challenges and strenuously argued in support of them demonstrates that counsel believed there was a serious violation of Mr. Carmichael's rights, but was simply unaware of his obligations under the controlling New York standard.

On the question of prejudice, the state intermediate appellate court rejected Mr. Carmichael's ineffective assistance of counsel claim because, "defendant has not shown that such efforts would have ultimately resulted in the seating of any jurors peremptorily challenged by the prosecutor." <u>People v. Carmichael</u>, 118 A.D.3d 603, ___(N.Y. Sup. Ct. 1st Dep't 2014) (citation omitted), Ex. C-4.  This, however, is an

unreasonable interpretation of the Strickland standard.  See 28 U.S.C. § 2254(d)(1).

Because they impact the overall legitimacy of the proceeding, Batson errors are structural errors, Galarza v. Keane, 252 F.3d 630, 638 (2ᵈ Cir. 2001); Tankleff v. Senkowski, 135 F.3d 235, 248 (2ᵈ Cir. 1998), where prejudice to the outcome cannot be evaluated.  See United States v. Yakobowicz, 427 F.3d 144, 155 (2ᵈ Cir. 2005) ("Structural errors are those that so fundamentally undermine the fairness or the validity of the trial that they require voiding [the] result [of the trial] regardless of identifiable prejudice.") (citation omitted); see also Harris v. Hardy, 680 F.3d 942, 965 (7ᵗʰ Cir. 2012) ("The state court unreasonably determined that [petitioner] failed to show prejudice as a result of . . . counsel's failure to [make a sufficient record to support the Batson challenge].  If counsel had [made a sufficient record] . . . a Batson violation" could have been established.").

In Mr. Carmichael's case, there was ample evidence for his trial attorney to use to meet the New York "other facts or circumstances" rule.  Ms. Boiken, who was peremptorily challenged by the prosecution, volunteered that her aunt was a New York Police Department lieutenant, VD. 107-08, 146, and Ms. Simons volunteered that her uncle was a retired member of the FBI.  VD. 250.  Also, Ms. Hamilton and Ms. Grant both volunteered that they had multiple friends and family members who were members of law enforcement.  VD. 101-02, 248.  These are the types of

"proprosecution backgrounds" that the New York Court of Appeals, in <u>Brown</u>, specifically described as meeting the "other facts or circumstances" rule. 97 N.Y.2d at 507. But, due to his lack of understanding of his obligations under New York law, trial counsel failed to provide this information as part of his <u>Batson</u> challenges. In addition, counsel failed to include in his <u>Batson</u> applications that the pattern of exclusion in this case was not limited; instead, the prosecutor acted throughout jury selection to exclude African-American individuals from the jury. Had trial counsel provided the additional facts and circumstances clear from the record, the trial court, following <u>Brown</u>, would have been obligated to find that the defense had established a prima facie case of discrimination in the exercise of peremptory challenges by the prosecution.

As in <u>Hardy</u>, had trial counsel used the evidence in the record and met the controlling standard – here, New York's "other facts or circumstances" rule – the <u>Batson</u> violation could have been established. Accordingly, the state court unreasonably applied the <u>Strickland</u> prejudice standard by requiring Mr. Carmichael to demonstrate the ultimate outcome of counsel's inadequate (under New York law) <u>Batson</u> challenges. Therefore, Mr. Carmichael's petition for a writ of habeas corpus should be granted. <u>See</u> U.S. Const. amends. VI, XIV; 28 U.S.C. 2254(d)(1); <u>Strickland v. Washington</u>.

28

<u>CONCLUSION</u>

For all of the above reasons, this Court should grant Brian Carmichael's

petition for a writ of  habeas corpus.

Dated:      New York, New York
            December 10, 2014


                        Respectfully submitted,


                        _____
                        RICHARD M. GREENBERG, ESQ. (RG-5556)
                        SARA GURWITCH, ESQ.
                        Attorneys for Petitioner

                        OFFICE OF THE APPELLATE DEFENDER
                        11 Park Place, Suite 1601
                        New York, NY  10007
                        (212) 402-4100