14-cv-10012-KPF-AJP

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

BRIAN CARMICHAEL,

Petitioner,

-against-

PAUL CHAPPIUS,

Superintendent, Elmira Correctional Facility,

Respondent.

REPLY MEMORANDUM IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

RICHARD M. GREENBERG, ESQ.
rgreenberg@apppellatefender.org
SARA GURWITCH, ESQ.
sgurwitch@appellatedefender.org
Attorneys for Petitioner

OFFICE OF THE APPELLATE DEFENDER
11 Park Place, Suite 1601
New York, NY  10007
212-402-4100

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT

    POINT I
    RESPONDENT'S CONTENTION THAT THE STATE COURTS DID NOT APPLY A STANDARD MORE ONEROUS THAN THE FEDERAL CONSTITUTIONAL STANDARD IS NOT SUPPORTED BY THE RECORD (replying to respondent's memorandum at 10-33).
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT II
    RESPONDENT'S ARGUMENTS IN OPPOSITION TO BRIAN CARMICHAEL'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL ARE BASED ON ERRONEOUS LEGAL THEORIES (replying to respondent's memorandum at 33-47). . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

Cases

Batson v. Kentucky, 476 U.S. 79 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Brown v. Alexander, 543 F.3d 94 (2$^d$ Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 5-6

Flores v. Demskie, 215 F.3d 293 (2$^d$ Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Galarza v. Keane, 252 F.3d 630 (2$^d$ Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 10, 11

Johnson v. California, 545 U.S. 162 (2005) . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8

Jones v. West, 555 F.3d 90 (2$^d$ Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Morales v. Greiner, 273 F. Supp.2d 236 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . 10

Overton v. Newton, 295 F.3d 270 (2$^d$ Cir 2002) . . . . . . . . . . . . . . . . . . . . . . . . 6

People v. Brown, 97 N.Y.2d 500 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

People v. Carmichael, 73 A.D.3d 622 (1st Dep't 2010) . . . . . . . . . . . . . . . . . . . 2

Smith v. Texas, 311 U.S. 128 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Strauder v. West Virginia, 100 U.S. 303 (1879) . . . . . . . . . . . . . . . . . . . . . . . . 8

Strickland v. Washington, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . 10

Tankleff v. Senkowski, 135 F.3d 235 (2$^d$ Cir. 1998) . . . . . . . . . . . . . . . . . 10, 11

Truesdale v. Sabourin, 427 F. Supp.2d 451 (S.D.N.Y. 2006) . . . . . . . . . . . . . . 5

ARGUMENT

POINT I

RESPONDENT'S CONTENTION THAT THE STATE COURTS DID NOT APPLY A STANDARD MORE ONEROUS THAN THE FEDERAL CONSTITUTIONAL STANDARD IS NOT SUPPORTED BY THE RECORD (replying to respondent's memorandum at 10-33).

With each of the four <u>Batson</u> challenges, the defense presented strong numerical evidence of racial discrimination in the prosecution's exercise of peremptory challenges. The state trial court rejected these <u>Batson</u> challenges based on New York law, which typically requires additional "facts or circumstances" at <u>Batson</u>'s Step One – and the Appellate Division affirmed the trial court based on the same reasoning. Respondent's assertion, therefore, that the New York courts did not apply New York's additional facts or circumstances rule in this case is inaccurate.

In denying each of the <u>Batson</u> challenges, the trial judge stated that the numerical evidence alone was insufficient under New York law. <u>See</u> Carmichael Opening Memorandum of Law at 4-8. Respondent, however, takes the position that the trial judge did not apply a standard that requires more than a numerical showing because, in his denial of the fourth <u>Batson</u> application, the judge stated that "generally" numerical evidence is insufficient to meet the Step One burden. Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas

1

Corpus ("Resp. Memo.") at 26. This use of the word "generally" is insufficient to change the fact that the trial judge rejected each of the Batson challenges because each was based on numerical evidence only.

In a similar argument, but focused on the Appellate Division's decision, respondent contends that one can infer that the Appellate Division applied the proper standard because it cited Johnson v. California, 545 U.S. 162 (2005). See Resp. Memo. at 26.[1] This might be a valid argument if the Appellate Division had not explained its reasoning and simply referenced Johnson. But that is not what occurred here. Instead, the Appellate Division explained its reasoning and that reasoning is at odds with Supreme Court precedent. Accordingly, contrary to respondent's position, the reference to Johnson did not cure the constitutional deficiency in the Appellate Division's decision.

Furthermore, while respondent contends that the numerical evidence presented at each of the four Batson challenges was insufficiently strong to meet the "non-

---

[1] The relevant portion of the Appellate Division's decision is:

Defendant did not produce "evidence sufficient to permit the trial judge to draw an inference that discrimination ha[d] occurred" in the exercise of peremptory challenges (Johnson v. California, 545 U.S. 162, 170 (2005)). While numerical evidence may suffice, in this case it did not warrant an inference of discrimination.

People v. Carmichael, 73 A.D.3d 622, 622 (1st Dep't 2010).

onerous" burden at Batson's Step One, see Johnson, 545 U.S. at 170, this is inaccurate. Where the exclusion rates ranged from 74 percent to 100 percent, a "pattern" supporting an inference of discrimination, see Batson, 476 U.S. at 97, was established.

Respondent recognizes that in Batson itself the Supreme Court explained that the Step One burden can be met with a numerical showing, see Resp. Memo. at 25, but argues that the high exclusion rates in this case were insufficient to meet the Step One burden. Accordingly, one can infer that respondent's position is that numerical evidence will only be sufficient at Step One where there are multiple Batson challenges, each with an exclusion rate of no less than 100 percent. The caselaw, however, does not support this extreme position. Furthermore, such a rule would be at odds with the Supreme Court's description of the Step One burden as not "onerous," see Johnson, 545 U.S. at 170, and would fail to protect the constitutional principles at issue in the Batson rule.

Respondent also attempts to dismiss the statistical evidence presented by Mr. Carmichael by asserting that the trial judge made a factual finding regarding Ms. Velarde. Resp. Memo. at 30 ("Noteworthy too, petitioner's statistical analysis dismisses the trial judge's fact finding – as noted, presumed correct for purposes of habeas review – that Juror 25/Yalira Velarde was a black person."). Respondent is

incorrect. The trial judge did <u>not</u> make a factual finding regarding Ms. Velarde's race/ethnicity. To the contrary, the judge ended the discussion about Ms. Velarde by stating, "I am not saying you are right and I am wrong or the opposite." VD. 322.[2] Furthermore, given the lack of factual finding regarding Ms. Velarde's race/ethnicity, it is inappropriate for respondent to assert that an African-American individual was "removed by petitioner." Resp. Memo. at 29. As respondent is aware, the record demonstrates that defense counsel did not believe Ms. Velarde to be African-American, VD. 322, and there are no objective facts in the record to the contrary.[3]

While Mr. Carmichael's <u>Batson</u> claim is based on the exclusion rate, respondent also analyzes the prosecution's challenge rate. <u>See</u> Resp. Memo. at 31. Yet, the challenge rate also supports an inference of discrimination, as the prosecutor challenged African-American members of the venire at approximately double the rate at which African-American individuals were represented in the venire. This challenge rate is not, as respondent describes it, only a "slight departure," Resp. Memo. at 31-32, from the statistically-anticipated rate.[4] The high challenge rate –

---

[2] As in Mr. Carmichael's opening memorandum of law, the transcript of the voir dire, conducted September 17-20, 2007, is cited as "VD." followed by the page number.

[3] Furthermore, even if Ms. Velarde is African-American, the defense still established a strong numerical pattern supporting an inference of discrimination.

[4] According to respondent, the prosecution's challenge rate for African-American members of the venire was twenty-five percent, when thirteen percent of the venire was African-

nearly double what should have occurred statistically – is also an indication that the prosecutor was acting with discriminatory intent.

Turning to the caselaw, it is notable that there are a number of cases, cited by Mr. Carmichael in his opening memorandum of law, that conclude that the New York State interpretation of Batson's Step One is in conflict with federal law, but respondent has simply failed to address these cases. In Truesdale v. Sabourin, 427 F. Supp.2d 451, 459 (S.D.N.Y. 2006), the habeas court found that the New York State court decisions, which relied on New York's Brown standard, were contrary to clearly established federal law. Jones v. West, 555 F.3d 90, 97 (2$^d$ Cir. 2009), is a similar case passed over by respondent.

Furthermore, respondent incorrectly suggests that Brown v. Alexander, 543 F.3d 94 (2$^d$ Cir. 2008), supports its position. See Resp. Memo. at 27-28. In Brown, the habeas court concluded that the state courts had not unreasonably applied Batson in finding no prima facie case of discrimination where the only showing was a single Batson challenge early in the voir dire, at a point when the prosecutor had used peremptory challenges to remove seven of fifteen African-American individuals – an exclusion rate of under 40 percent. 543 F.3d at 99. In addition, at the time of the

---

American individuals, and the prosecution's challenge rate for African-American members of the venire was twenty-eight percent when fifteen percent of the venire was African-American individuals. Resp. Memo. at 31-32.

5

single Batson challenge, four of seven sworn jurors were African-American. People v. Brown, 97 N.Y.2d 500 (2002). Respondent makes a similar error in its use of Overton v. Newton, 295 F.3d 270 (2$^\text{d}$ Cir. 2002). See Resp. Memo. at 32. In Overton, the habeas court concluded that the state courts had not unreasonably applied Batson in finding no prima facie case of discrimination where a single Batson challenge was made after the prosecutor exercised seven peremptory challenges against African-American members of the venire, but three African-American individuals had been selected as jurors. 295 F.3d at 270-80. The Brown and Overton records did not demonstrate a pattern of excluding African-American members of the venire.

Respondent also seeks to undermine Mr. Carmichael's position by contending that he has "pivoted" by making different arguments in different courts. See Resp. Memo. at 11. This is an inappropriate criticism. Mr. Carmichael's appointed counsel has done what is required of counsel: presented legal arguments based on the law of the jurisdiction in each of the courts at issue. Mr. Carmichael should not be criticized for appropriate efforts to vindicate his constitutional rights.

Respondent has also asserted that Mr. Carmichael's four Batson challenges were properly denied because he failed to demonstrate that he would have ultimately prevailed with the Batson challenges. Resp. Memo. at 28-29. Given that Mr.

Carmichael's claims deal with the improper adjudication of <u>Batson</u>'s Step One, Mr. Carmichael was not required to make this showing. Yet, even though Mr. Carmichael does not have the burden of demonstrating that he would have ultimately prevailed, the extremely strong pattern of discriminatory behavior demonstrated during the four <u>Batson</u> challenges suggests that he likely would have prevailed, if the appropriate burdens had been applied.

On this point, respondent erroneously contends that, because the defense did not provide information beyond the numerical pattern at Step One, the defense would have been unable to do so at Step Three. <u>See</u> Resp. Memo. at 29. Mr. Carmichael's trial attorney has explained, however, that he believed that, under <u>Batson</u>, he was not required to provide "'other'" information until Step Three. Affirmation of James Palumbo, Esq., dated June 26, 2012, at Ex. C-1, ¶ 7. Accordingly, that defense counsel did not provide such additional information as part of the Step One showing does not demonstrate that it did not exist.

Similarly, respondent states that Mr. Carmichael's petition should be denied because, "petitioner has never pointed to anything in the record that suggests those stricken venirepersons somehow were more predisposed to the defense than the jurors who were seated." Resp. Memo. at 28. This argument demonstrates a misunderstanding of the principles behind <u>Batson</u>. <u>Batson</u> concerns discrimination

7

in the exercise of peremptory challenges, not attempts to remove prospective jurors who might be more favorable to one party or the other.[5] As the Supreme Court explained in <u>Johnson</u>:

> The constitutional interests <u>Batson</u> sought to vindicate are not limited to the rights possessed by the defendant on trial, <u>see</u> 476 U.S. at 87, nor to those citizens who desire to participate "in the administration of the law, as jurors," <u>Strauder v. West Virginia</u>, 100 U.S. 303, 308. Undoubtedly, the overriding interest in eradicating discrimination from our civic institutions suffers whenever an individual is excluded from making a significant contribution to governance on account of his race. Yet the "harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." <u>Batson</u>, 476 U.S. at 87; <u>see also</u> <u>Smith v. Texas</u>, 311 U.S. 128, 130 (1940) ("For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government.").

545 U.S. at 171-72.

Accordingly, this Court should not attempt to discern what might have happened if the <u>Batson</u> challenges had progressed beyond Step One. Instead, because the denial of the challenges at Step One was an unreasonable interpretation of <u>Batson</u>, Mr. Carmichael's petition for a writ of habeas corpus should be granted.

---

[5] Respondent also erroneously states, "In the end, as petitioner acknowledged, nothing indicated that the prosecutor's strikes were motivated by a discriminatory purpose." Resp. Memo. at 29. Mr. Carmichael, however, has consistently asserted that the prosecution was acting with discriminatory intent in its exercise of peremptory challenges.

## POINT II[6]

RESPONDENT'S ARGUMENTS IN OPPOSITION TO BRIAN CARMICHAEL'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL ARE BASED ON ERRONEOUS LEGAL THEORIES (replying to respondent's memorandum at 33-47).

Echoing the Appellate Division's decision, respondent relies primarily on two arguments in opposition to Mr. Carmichael's claim of ineffective assistance of counsel. First, respondent speculates that Mr. Carmichael would not have prevailed with his Batson claim, even if his attorney had been aware of his burden under New York law at Batson's Step One. Second, respondent erroneously terms the evidence against Mr. Carmichael "crushing," Resp. Memo. at 37, and suggests an incorrect legal standard where this Court would look to the strength of the trial evidence when evaluating counsel's admitted error in effectuating Mr. Carmichael's rights under Batson. Because respondent's arguments are supported neither by caselaw nor logic, they should be rejected.

Respondent argues that Mr. Carmichael cannot prevail with his claim of ineffective assistance of counsel because he has not demonstrated that he would have

---

[6] As respondent has failed to respond to the argument Mr. Carmichael presented in his opening memorandum of law at Point II, that the state court factual determination that no prima facie case of discrimination had been established under Batson is unreasonable by clear and convincing evidence, Mr. Carmichael does not address that argument in this reply memorandum. Regarding this claim, Mr. Carmichael relies on the arguments presented in his opening memorandum of law at Point II.

9

ultimately prevailed with the Batson challenges. Resp. Memo. at 46. Under respondent's analysis, there could never be a successful ineffective assistance of counsel claim for counsel's errors at Batson's Step One as there would never be a record for the reviewing court to use to determine whether the Batson claim should have been successful. Respondent's analysis directly contradicts the fundamental principle that effective assistance of counsel requires, at a minimum, knowledge of the controlling law. See, e.g., Flores v. Demskie, 215 F.3d 293 (2$^d$ Cir. 2000).[7]

As part of this argument, respondent turns to pure speculation. Respondent states, "the record here does not eliminate the possibility that the trial judge himself observed something that would have negated the inference of discrimination – something about the contested jurors' demeanor, just as an example." Resp. Memo. at 45-46. There is no reason for this Court to adopt unsupported speculation.

Respondent is also incorrect in asserting that this Court should look to the strength of the trial evidence in order to determine whether Mr. Carmichael would

---

[7] In support of this argument, respondent cites Morales v. Greiner, 273 F. Supp.2d 236, 253 (E.D.N.Y. 2003), in which the court stated, "[Petitioner] cannot possibly demonstrate that the replacement of one or two admittedly impartial jurors with one or two other equally impartial jurors would have a reasonable probability of altering the verdict. There is simply no cognizable claim under Strickland where the ineffectiveness concerns an alleged Batson violation but no indication of an unrepresentative, biased, or otherwise unfair jury." This analysis, however, has not been adopted by other courts, and is at odds with the law on structural error. See Galarza v. Keane, 252 F.3d 630, 638 (2$^d$ Cir. 2001); Tankleff v. Senkowski, 135 F.3d 235, 248 (2$^d$ Cir. 1998).

have been acquitted but for counsel's ineffectiveness with respect to the Batson claim. See Resp. Memo. at 47. First, this argument suffers from a deep logical flaw. Because of counsel's errors, racial discrimination in jury selection was permitted to stand; one simply cannot determine the impact of this error by looking to the strength of the trial evidence. It is for this reason that Batson errors, which impact the overall legitimacy of the proceeding, are structural errors. See, e.g., Galarza v. Keane, 252 F.3d 630, 638 (2$^d$ Cir. 2001); Tankleff v. Senkowski, 135 F.3d 235, 248 (2$^d$ Cir. 1998).[8]

Also, while the trial evidence is not relevant to the issues before this Court, that evidence is far from "crushing," Resp. Memo. at 37, as respondent describes it.[9] The prosecution's case relied almost entirely on the testimony of Denise May, who received an extraordinary deal in exchange for testifying against Brian Carmichael. Ms. May's testimony suffered not only from her obvious self-interest, but from her admitted dishonesty with the authorities and her cognitive deficits, due to her extremely heavy drug use. In addition, while respondent contends that Ms. May's

---

[8] It is notable that respondent fails to address the portion of Mr. Carmichael's memorandum of law dealing with structural error. See Carmichael Opening Memorandum of Law at 27.

[9] Given the lack of relevance of the trial evidence, Mr. Carmichael did not provide an extensive description of the trial facts in his petition or supporting memorandum of law. A full recitation of the trial facts is contained in Mr. Carmichael's briefs in the Appellate Division, which are at Exhibits A and E of Respondent's Appendix.

account was corroborated, Resp. Memo. at 38-39, it is notable that the undercover officers, who conducted extensive electronic surveillance during the operation that began with Ms. May as its target, did not connect Mr. Carmichael to Ms. May's drug purchases by audio or video evidence.[10]

In evaluating Mr. Carmichael's claim of ineffective assistance of counsel, this Court should look to trial counsel's ability to effectuate Mr. Carmichael's constitutional rights under Batson. As counsel has admitted, Mr. Carmichael's rights were violated because counsel was unaware of the New York "additional facts or circumstances" rule for establishing a prima facie case of discrimination under Batson. Accordingly, this Court should grant Mr. Carmichael's petition for a writ of habeas corpus.

---

[10] Respondent's description of the trial facts contains a number of exaggerations and misleading statements. One such statement is that the police, "recovered a quantity of ketamine from a storage facility leased in petitioner's name." Resp. Memo. at 4. Respondent is aware that the "quantity" was extremely small, just .8 grains. Similarly, respondent inaccurately describes the extent of Ms. May's drug dealing activities. See Resp. Memo. at 2. In fact, Ms. May, the initial target of the police investigation, was a large-scale dealer of cocaine, methamphetamine, ecstasy and ketamine. She, however, was able to reduce her prison time significantly by testifying against Brian Carmichael.

## CONCLUSION

For the reasons stated above and those presented in Brian Carmichael's petition and supporting memorandum of law, this Court should grant Brian Carmichael's petition for a writ of habeas corpus.

Dated:     New York, New York
           May 5, 2015

                Respectfully submitted,

                _____
                RICHARD M. GREENBERG, ESQ.
                SARA GURWITCH, ESQ.
                Attorneys for Petitioner

                OFFICE OF THE APPELLATE DEFENDER
                11 Park Place, Suite 1601
                New York, NY  10007
                212-402-4100