USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 13, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
 :
BRIAN CARMICHAEL, :
 :
                              Petitioner, :    14 Civ. 10012 (KPF)(AJP)
 :
            v. :    **OPINION AND ORDER**
 :
PAUL CHAPPIUS, :
 :
                             Respondent. :
 :
------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge:

      On December 10, 2007, Petitioner Brian Carmichael was convicted in the Supreme Court of New York, New York County, of three counts of second-degree sale of a controlled substance, for which he is now serving a seventeen-year sentence. On December 19, 2014, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this Court (the "2014 Petition"). This Court granted the 2014 Petition. Respondent appealed this Court's Order, and on February 17, 2017, the Second Circuit vacated the Order and remanded the matter back to this Court.

      On remand, Petitioner sought to advance a habeas claim consistent with the Second Circuit's decision. To that end, on April 14, 2017, Petitioner filed a supplemental memorandum in support of his petition for a writ of habeas corpus (the "2017 Petition"), which memorandum amplified his earlier claim of ineffective assistance of counsel. For the reasons set forth in the remainder of this Opinion, this Court denies the 2017 Petition.

# BACKGROUND[1]

This Court's April 21, 2016 Order provides a thorough review of the relevant facts of the case. *See Carmichael* v. *Chappius,* 182 F. Supp. 3d 74, 78-80 (S.D.N.Y. 2016) ("*Carmichael II*"), *vacated,* 848 F.3d 536 (2d Cir. 2017) ("*Carmichael III*"). As a result, this Court assumes the parties' familiarity with the underlying facts and will only discuss the procedural posture and supplemental briefing as relevant to its resolution of the pending petition.

## A. The 2014 Petition

On December 19, 2014, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this Court. The 2014 Petition argued that: (i) Petitioner's conviction had been obtained in violation of *Batson* v. *Kentucky,* 476 U.S. 79 (1986); and (ii) as a result of the underlying *Batson* claim, Petitioner had received ineffective assistance of counsel in violation of *Strickland* v. *Washington,* 466 U.S. 668 (1984). On July 17, 2015, Magistrate Judge Andrew J. Peck issued a Report and Recommendation, in which he recommended that this Court deny Petitioner's request for relief under both theories. *Carmichael* v. *Chappius,* No. 14 Civ. 10012 (KPF) (AJP), 2015 WL 4385765 (S.D.N.Y. July 17, 2015) ("*Carmichael I*"); *see id.* at *18-22 (addressing ineffectiveness arguments). Petitioner timely objected to Magistrate Judge Peck's conclusions.

---

[1] This Opinion draws on information contained in Petitioner's opening brief in support ("Pet. Br.," Dkt. #47), Respondent's brief in opposition ("Resp. Opp.," Dkt. #51), and Petitioner's reply brief ("Pet. Reply," Dkt. #54).

For ease of reference, the Court will refer to the Report and Recommendation by Magistrate Judge Andrew J. Peck (Dkt. #21) as the "Report."

On April 21, 2016, this Court respectfully declined to adopt the Report, and granted the § 2254 Petition on the basis of Petitioner's substantive *Batson* claim. *See Carmichael II*, 182 F. Supp. 3d at 93. Given the resolution of Petitioner's first argument, this Court declined to address Petitioner's ineffective assistance of counsel claim as moot. *See id.* at 93 n.7.

**B.     The Second Circuit Opinion**

Respondent subsequently appealed this Court's Order granting Petitioner's 2014 Petition. On February 17, 2017, after briefing and argument, the Second Circuit vacated this Court's Order and remanded the case for such further proceedings as may be appropriate and consistent with its decision. *See Carmichael III*, 848 F.3d 536. In sum, the Second Circuit held that this Court did not exercise proper deference when evaluating the state court's ruling under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. § 2254(d). *See id.* at 548-49.

AEDPA, the Second Circuit emphasized, establishes a highly deferential standard of review, a standard that prohibits a federal court from granting a writ of habeas corpus simply because the state court applied federal law incorrectly or erroneously. *See Carmichael III*, 848 F.3d at 548-49. Instead, the federal court must find that the state court applied federal law unreasonably. *See id.* Because the state court's ruling on Petitioner's *Batson* claim was not, in its estimation, "beyond any possibility for fairminded disagreement," and therefore was not objectively unreasonable, the Second Circuit reversed this Court's grant of habeas corpus. *Id.* (quoting *Harrington* v.

3

*Richter*, 562 U.S. 86, 103 (2011)). Similar to this Court, the Second Circuit did not reach Petitioner's second claim of ineffective assistance of counsel under *Strickland*.

**C.  The 2017 Petition**

On April 14, 2017, Petitioner filed a supplemental petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this Court. (*See* Pet. Br.). Petitioner renewed his ineffective assistance of counsel claim from the 2014 Petition that this Court previously, upon resolution of the substantive *Batson* claim, had declined to address. However, the two claims are interrelated, inasmuch as Petitioner's ineffective assistance of counsel relies on the underlying *Batson* issue. In relevant part, Petitioner argues that his trial attorney was unaware of New York law that requires attorneys to cite "other facts or circumstances," in addition to numerical evidence, to demonstrate a prima facie case of discrimination in the exercise of peremptory challenges. (*Id.* at 4 (quoting *People* v. *Brown*, 97 N.Y.2d 500, 507 (2002))). At trial, Petitioner's counsel raised several *Batson* objections on the basis of the prosecution striking black venirepersons at a disproportionate rate. (*See id.* at 2). However, counsel failed to supplement his objections with "other facts or circumstances" to show an inference of discrimination, as Petitioner claims was required by New York law and requested by the court. (*See id.* at 2-3).

Petitioner argues that both prongs of the two-step test established in *Strickland* are met: (i) counsel's performance fell below an objective standard of reasonableness, and (ii) Petitioner was prejudiced by the deficient performance.

4

(*See* Pet. Br. 2-18). Specifically, Petitioner claims that counsel's inadequate challenge to a *Batson* violation under New York law meets *Strickland*'s first prong of defective performance. (*See id.* at 4-17). Next, Petitioner alleges that *Batson* errors are structural errors, rendering a proceeding fundamentally unfair. (*See id.* at 7-18). As a result, he asserts, prejudice is presumed and the second prong of *Strickland* is satisfied. (*See id.*).

## DISCUSSION

**A. Applicable Law**

**1. Reviewing the Report and Recommendations of a Magistrate Judge**

In renewing his ineffectiveness claims, Petitioner has returned the Court's attention to that portion of Magistrate Judge Peck's Report that it, and the Second Circuit, did not earlier address. A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012). By contrast, when a petitioner makes specific objections to a magistrate judge's findings, the reviewing court must undertake a *de novo* review of those findings. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *United States* v. *Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

## 2. Reviewing State Court Decisions Under the Antiterrorism and Effective Death Penalty Act

Under AEDPA, a federal court cannot grant a petition for a writ of habeas corpus based on a claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision: (i) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (ii) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen* v. *Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford* v. *Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough* v. *Alvarado*, 541 U.S. 652, 664 (2004)).

Federal law is "clearly established" when it is expressed in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Howes* v. *Fields*, 565 U.S. 499, 505 (2012) (internal quotation marks omitted). A state court's decision is "contrary" to clearly established federal law when the state court "applies a rule that contradicts the governing law set forth in" a Supreme Court opinion or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a ... different [result]." *Williams* v. *Taylor*, 529 U.S. 362, 405-06 (2000). And a state court's

decision can only be considered "unreasonable" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."  *Harrington*, 562 U.S. at 102; *see also Woods* v. *Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (per curiam) (explaining that AEDPA only allows federal habeas courts to overturn state court decisions "when there could be no reasonable dispute that they were wrong"); *Vega* v. *Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (same).

When a federal court reviews a state court's factual determinations, those decisions "shall be presumed to be correct," and that presumption can only be rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also McKinney* v. *Artuz*, 326 F.3d 87, 101 (2d Cir. 2003).

### 3. The *Strickland* Framework

In *Strickland*, the Supreme Court established a two-prong test for evaluating Sixth Amendment ineffective assistance of counsel claims.  *See Strickland*, 466 U.S. at 669.  First, the defendant (Petitioner in this case) must show that counsel's representation was deficient, falling below the objective standard of reasonableness.  *See id.* at 687-88.  During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Courts must make allowances for counsel's strategic choices and apply "a heavy measure of deference" to counsel's judgments.  *Id.* at 691.

7

Next, the defendant must establish that counsel's errors resulted in actual prejudice. *See Strickland*, 446 U.S. at 694. A defendant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In certain circumstances, where it is difficult to measure the precise effect of the errors committed by trial counsel against the weight of the evidence, prejudice may be presumed. *See id.* at 692.

A court is not required to conduct a *Strickland* inquiry in a particular order. *See Strickland*, 466 U.S. at 697. If the defendant does not successfully establish either the performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot. *See id.*

4. **AEDPA Review of *Strickland* Claims**

*Strickland* and AEDPA each require a highly deferential standard of review. When applied in tandem — in other words, when the claim at issue in a habeas petition is one of ineffective assistance of counsel — AEDPA review is "cabined by double layers of deference." *Boyland* v. *Artus*, 734 F. App'x 18, 19 (2d Cir. 2018) (summary order). To succeed on an ineffective assistance of counsel claim, a defendant petitioning for federal habeas relief must show, not that the state court applied *Strickland* incorrectly, but that the state court applied the already deferential *Strickland* standard in an objectively unreasonable manner. *See Spicola* v. *Unger*, 703 F. App'x 51, 53 (2d Cir. 2017) (summary order). "The *Strickland* standard is rigorous, and the great majority

of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt* v. *Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

**B.   Analysis**

   **1.   The State Court Did Not Unreasonably Apply *Strickland* When It Determined That Counsel's Allegedly Deficient Performance Did Not Result in Actual Prejudice**

To review, consistent with AEDPA, a federal court may only grant a writ of habeas corpus for a claim that has been adjudicated on the merits by a state court if the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).[2] Petitioner argues that the state court applied the standard for ineffective assistance of counsel in an objectively unreasonable way by requiring a showing of actual prejudice. (*See* Pet. Br. 2). Instead, Petitioner claims, the state court should have presumed prejudice. (*See id.* at 10).

Given AEDPA's deferential standard of review, the role of this Court "is not to conduct *de novo* review of factual findings and substitute the federal court's own opinions for the determination made on the scene by the trial judge." *Davis* v. *Ayala*, — U.S. —, 135 S. Ct. 2187, 2192 (2015). In fact, this Court may not grant relief simply because it concludes that the state court applied the *Strickland* standard incorrectly. *See id.* Instead, the application of

---

[2]   *Strickland* v. *Washington* qualifies as clearly established law. *See Williams* v. *Taylor*, 529 U.S. 362, 391 (2000); *Sellan* v. *Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001) ("It matters only that the *Strickland* performance and prejudice test has been 'clearly established' — not that a particular theory of ineffective assistance derived from *Strickland* has been clearly established.").

9

*Strickland* must also be unreasonable — a significantly higher bar to a successful habeas claim. *See id.*

Therefore, the first step in any § 2254 analysis is to review the state court's decision through a highly deferential lens. In this case, on June 24, 2014, the state court rejected Petitioner's claim of ineffective assistance of counsel on the basis of *Strickland*'s second prong, prejudice, without reaching the question of counsel's performance:

> Regardless of whether counsel should have made a more detailed attempt to establish a prima facie case of discrimination pursuant to *Batson* v. *Kentucky*, 476 U.S. 79, 106 (1986), defendant has not shown that such efforts would have ultimately resulted in the seating of any jurors peremptorily challenged by the prosecutor. In any event, defendant has not shown that any *Batson* violation resulted in an unfair jury (*see Morales* v. *Greiner*, 273 F. Supp. 2d 236, 253 (E.D.N.Y. 2003)).

*People* v. *Carmichael*, 118 A.D.3d 603, 604 (1st Dep't 2014). According to the *Strickland* Court, the state court is entitled, and encouraged, to decide Petitioner's claim on a single prong. *See Strickland*, 466 U.S. at 697. Courts do not need to decide whether a counsel's performance was deficient prior to determining whether the alleged deficiencies resulted in actual prejudice. *See id.* Rather, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Petitioner argues that the state court unreasonably applied *Strickland* by requiring the Petitioner to show that the alleged attorney misconduct — the *Batson* violation — resulted in an "unfair jury." (Pet. Br. 3). Instead, Petitioner

10

claims, prejudice under *Strickland* should be presumed because counsel's failure to effectuate *Batson*'s safeguards is a structural error whose harm cannot be quantified. (*See id.*). Therefore, Petitioner argues that the state court's harmless error analysis is not only inappropriate, but also unreasonable. (*See id.*).

The *Strickland* Court provides facial support for Petitioner's claims: The Court allowed that, in certain contexts, the impairment of rights may be so easily identifiable, and resulting prejudice so likely, that prejudice must be presumed. *See Strickland*, 466 U.S. at 692 (explaining that prejudice is presumed in the case of actual or constructive denial of counsel, or when counsel is burdened by actual conflict). The Second Circuit went one step further and specifically named *Batson* errors as structural in nature, thereby limiting harmless error review. *See Tankleff* v. *Senkowski*, 135 F.3d 235, 240 (2d Cir. 1998) ("Harmless error analysis is inappropriate in this context, however, because exclusion of jurors on the basis of race is a structural error that can *never* be harmless."); *see also Galarza* v. *Keane*, 252 F.3d 630, 638 n.8 (2d Cir. 2001) ("We have made clear, however, that a Batson error 'is a structural error that is not subject to harmless error review.'" (quoting *Tankleff*, 135 F.3d at 248)).

However, a recent Supreme Court decision indicates that *Batson* claims could be subject to harmless error analysis. *See Davis*, — U.S. at —, 135 S. Ct. at 2202. In *Davis*, the Supreme Court reviewed the Ninth Circuit's decision to grant a petitioner's writ of habeas corpus on the basis that the trial judge used

11

an impermissible procedure for ruling on the petitioner's *Batson* challenges. *See id.* Specifically, following each *Batson* objection raised by the defense, the trial court allowed the prosecutor to provide race-neutral explanations for the relevant peremptory challenge outside the presence of defense counsel. *See Davis*, — U.S. at —, 135 S. Ct. at 2194. Ultimately, the trial court concluded that the prosecutor's race neutral explanations were credible and the government was allowed to use "seven peremptories to strike all of the African-Americans and Hispanics who were available for service." *Davis*, — U.S. at —, 135 S. Ct. at 2193-94.

After the Ninth Circuit granted the petition, the Supreme Court reversed, holding that the Ninth Circuit failed to give enough deference to the state court's determination that the *Batson*-related error was harmless insofar as the petitioner could not prove that he suffered actual prejudice. The dissent, although not generally objecting to the use of harmless error analysis, did note that a future case could give the Court the opportunity to consider more directly whether *Batson* violations were structural errors. *See Davis*, — U.S. at —, 135 S. Ct. at 2214 n.1 (Sotomayor, J., dissenting) ("In a future case arising in a direct review posture, the Court may have occasion to consider whether the error that the Court assumes here gives rise to 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" (quoting *United States* v. *Cronic*, 466 U.S. 648, 658 (1984))).

When granting the 2014 Petition, this Court previously distinguished *Davis* from Petitioner's claim. *See Carmichael*, 182 F. Supp. 3d at 91-92. *Davis*, this Court held, was "fundamentally a case about the presence of counsel," not about the underlying *Batson* objection. *Id.* at 92. Therefore, this Court reasoned, any inference that *Davis* stood for the proposition that *Batson* claims — as opposed to claims concerning the presence of counsel — were subject to harmless error analysis is incorrect. However, in that analysis, this Court applied an insufficiently deferential standard, as underscored by the Second Circuit when reversing the Order:

> Had we been presiding over jury selection in Carmichael's case in the first instance, we might very well have concluded that Carmichael made out a *prima facie* showing of race discrimination. However, as we have had occasion to observe before, the fact that numerical evidence may have *permitted* an inference of discrimination does not establish that a contrary conclusion *must be* an unreasonable application of *Batson* and its progeny.

*Id.* at 548-49.

Applying the standard articulated by the Second Circuit in the current instance, this Court must determine not whether the state court was correct in applying harmless error analysis — as opposed to assuming prejudice — but whether it was unreasonable to do so. *See Knowles* v. *Mirzayance*, 556 U.S. 111, 123 (2009) ("[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold"). This Court must ask "whether 'there is any reasonable argument' supporting

13

the state court's conclusion." *Cullen*, 563 U.S. at 229 (quoting *Harrington*, 562 U.S. at 89).

This case is one in which fairminded jurists could disagree. Reasonable arguments exist in support of both positions: that *Batson* claims are structural errors for which prejudice is presumed, and, alternatively, that they are subject to harmless error review. In support of the former, one may argue that *Batson* claims are structural in nature, and that *Davis*, a case about presence of counsel, did not overrule Second Circuit precedent. On the other hand, one could argue — and would have a reasonable basis to do so — that *Davis* indicates that *Batson* challenges may be evaluated under harmless error, and therefore the state court did not err. Whether *Davis* conclusively determines that *Batson* challenges are structural errors, or subject to harmless error analysis, is immaterial. For present purposes, *Davis* is significant in that it provides a reasonable basis for the state court's analysis, leading this Court to the conclusion that the state court's determination was not objectively unreasonable. *See Harrington*, 562 U.S. at 101.

The standard of review under AEDPA "is difficult to meet, [but] that is because it was meant to be." *Harrington*, 562 U.S. at 102. Given *Davis*, and the reasonable basis for disagreement, the decision of the state court to apply harmless error analysis and deny the *Batson* claim due to a lack of evidence that the violation resulted in an unfair jury represented a reasonable application of controlling precedent.

### 2. Even If This Court Were to Review Petitioner's Claim, It Would Fail Under *Strickland*

As a federal habeas court, reviewing Petitioner's claim with AEDPA deference, this Court cannot grant the Petition simply because it would have reached a different conclusion in the first instance. *See Harrington,* 562 U.S. at 101. But even if this Court were reviewing Petitioner's *Strickland* claim without AEDPA deference, the outcome would be no different: Petitioner's ineffective assistance of counsel claim would fail. Counsel's alleged failure to craft more comprehensive challenges for his *Batson* claims does not rise to the level of deficient performance under *Strickland*. As a result, prejudice does not have to be addressed and Petitioner's entire claim fails.

As previously discussed, attorney performance — the first step of *Strickland* — requires the court to presume that counsel is competent. *See Cullen*, 563 U.S. at 196. Counsel's errors may be excused as trial strategy, and must be considered in the aggregate, as opposed to in isolation. *See Strickland*, 466 U.S. at 695-98. A defendant may identify numerous ways in which a trial counsel could have been better prepared without meeting the *Strickland* standard. *See United States* v. *Thomas*, 608 F. App'x 36, 39-40 (2d Cir. 2015) (summary order). In fact, the bar is so high that attorney behavior or performance that would otherwise be considered inattentive, or even professionally inept, is not always deficient under *Strickland. See, e.g., Ciaprazi* v. *Senkowski*, 151 F. App'x 62, 64 (2d Cir. 2005) (summary order) (finding that counsel's decision not to object to juror who was possibly sleeping during key stages of trial was not ineffective assistance of counsel).

Petitioner argues that counsel provided ineffective assistance when he declined to "provide other evidence ... beyond a numerical pattern" to support an inference of discrimination in violation of *Batson*. (Pet. Br. 6). When objecting to the prosecution's peremptory strikes of black venirepersons, defense counsel pointed to the number of black venirepersons excluded, in relation to the total number of black venirepersons. (*See id.* at 4). According to Petitioner, it is immaterial whether counsel's failure to draw the court's attention to any additional evidence of discrimination was in violation of New York law. (*See* Pet. Reply 1-2). Because the trial court directed counsel to supplement his *Batson* challenges with additional information, counsel's failure to do so rendered his performance deficient "under any standard," regardless of New York law. (*See id.* at 2).

Moreover, Petitioner argues that supplemental information was "right under [defense counsel's] nose" and should have been readily apparent to him. (*See* Pet. Reply 2). Specifically, counsel should have highlighted to the court that at least four of the six challenged black jurors had close ties to law enforcement through family or friends. (*See* Pet. Br. 6). Presumably, their relationships with law enforcement would make those venirepersons more amenable to the prosecution's case, and therefore desirable members of the jury. In Petitioner's estimation, the fact that the prosecution struck those venirepersons despite their pro-prosecution tendencies, combined with the numerical evidence, indicates that the peremptory strikes were motivated by racial intent. Ultimately, Petitioner argues, defense counsel's failure to make

16

this readily available argument to the court renders his performance deficient. (*See id.*).

While the combination of numerical evidence and venirepersons with pro-prosecution backgrounds may give rise to a successful *Batson* challenge under certain circumstances, "there are no fixed rules for determining what evidence will ... establish a prima facie case of discrimination." *Brown*, 97 N.Y.2d at 507 (quoting *People* v. *Bolling*, 79 N.Y.2d 317, 323-24 (1992)). In this case, evidence of pro-prosecution tendencies is less probative of *Batson* discrimination, primarily because the prosecution also challenged white prospective jurors with similar ties to law enforcement. (*See* Report 45). Presumably, if defense counsel had supplemented his *Batson* challenge as proposed by Petitioner, the prosecution could have drawn the court's attention to the ostensibly-pro-prosecution white jurors who were also excluded. *See Miller-El* v. *Dretke*, 545 U.S. 231, 232 (2005) ("More powerful than the bare statistics are side-by-side comparisons of some black venire panelists who were struck and white ones who were not."). The exclusion of those venirepersons indicates that the prosecution did not place a great deal of value on obtaining jurors who had personal relationships with law enforcement officers that might suggest a natural sympathy towards law enforcement. As a result, the exclusion of "pro-prosecution" black venirepersons is not compelling evidence that the prosecution challenged otherwise desirable jurors on the basis of race.

Therefore, the fact that the prosecution challenged black venirepersons who may have been sympathetic to law enforcement is hardly a smoking gun.

17

This is not the case where counsel "failed to make a 'sure winner' argument." *Eze* v. *Senkowski*, 321 F.3d 110, 137 (2d Cir. 2003) (quoting *Jackson* v. *Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998)). Instead, counsel's alleged mistake was that he failed to proffer a relatively weak argument. Without clear evidence that counsel's failure to offer the pro-prosecution theory did not arise from "the vagaries of ignorance, inattention or ineptitude," but rather his assessment that the supplemental information was relatively weak and would therefore be ineffective, "*Strickland*'s strong presumption must stand." *Lynn* v. *Bliden*, 443 F.3d 238, 249 (2d Cir. 2006). Counsel's omissions were not outside the wide range of professional competent assistance. Nor were counsel's errors, if any, "so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *See Strickland*, 466 U.S. at 687.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED and the Court adopts that portion of Magistrate Judge Peck's Report. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: September 13, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge